DELMAR URFER, Plaintiff-Appellant, *v.* COUNTRY MUTUAL INSURANCE CO., Defendant-Appellee.

Fourth District   No. 14489

Opinion filed June 2, 1978.—Rehearing denied June 29, 1978.

MILLS, P. J., concurring in part and dissenting in part.
CRAVEN, J., dissenting.

Harlan Heller, Ltd., of Mattoon (Harlan Heller, of counsel), for appellant.

William F. Meehling and Richard J. Bernardoni, both of Miller & Meehling, of Marshall, for appellee.

Mr JUSTICE TRAPP delivered the opinion of the court:

Plaintiff appeals from the order of the circuit court entered April 29, 1977, which dismissed his second amended complaint, denied an oral motion for leave to file an amended complaint, and entered judgment in bar.

Plaintiff was insured by a policy issued upon his motor vehicle. The complaint alleged a breach of the insurance contract arising from defendant's failure to pay hospital and medical bills up to $2000 incurred within one year of the date of injury and income continuation payments up to $150 per week for 52 weeks.

The insuring agreement recites that coverage was provided "In accordance with Article XXXV of the Illinois Insurance Code ("no fault insurance")," effective January 1, 1972. That article (Ill. Rev. Stat. 1971, ch. 73, par. 1065.150 *et seq.*), was declared unconstitutional on April 17, 1972. *Grace v. Howlett* (1972), 51 Ill. 2d 478, 283 N.E.2d 474.

Plaintiff suffered injuries on September 19, 1972, as a result of a collision with a school bus. His answer to interrogatories discloses that he sued the school district on August 13, 1974, that he received $50,000 in settlement and that that action was dismissed on February 17, 1976. This action was filed on January 5, 1976. Plaintiff's answers to interrogatories states that he first tendered a medical report to defendant on December 19, 1975.

An amended complaint filed March 23, 1976, sought damages under the provisions of section 603 of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 1065.153), which provided for payments under "no fault" coverage within 30 days after "reasonable proof of the fact and amount of expenses incurred * * *." That statute further provided that:

> "In the event the company fails to pay such benefits when due, the person entitled to such benefits may bring an action in contract to recover them. In the event the company is required by such action to pay any overdue benefits, the company must, in addition to the benefits received, be required to pay the reasonable attorney's fees incurred by the other party. In the event of a wilful refusal of the company to pay such benefits, the company must pay to the other party, in addition to other amounts due the other party, an amount which is three times the amount of unpaid benefits in controversy in the action."

That complaint sought recovery upon the quoted provision of the statute but was dismissed upon motion of defendant suggesting the decision in *Grace v. Howlett.*

The amended complaint at issue on appeal described in the court's order as "the Second Amended Complaint" did not seek recovery upon a theory of breach of contract, but sounded only in tort for compensatory and punitive damages alleging a wilful refusal to pay.

The order of the trial court provided that "said Amended Complaint is stricken on the grounds that said complaint is substantially insufficient in law, and the action is hereby dismissed." The order denied "the oral motion of Plaintiff for leave to file a Third Amended Complaint," and entered a judgment in bar of action.

Plaintiff argues that the amended complaint states a cause of action within the principles stated in *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540. The supreme court (64 Ill. 2d 338, 356 N.E.2d 75) had occasion to review only an issue of the taxing of costs.

In *Ledingham,* the insured sued to recover payments for medical and hospital expenses alleged to be payable under a policy of health insurance. In separate counts, the complaint claimed actual and punitive damages for "wilful and wanton conduct" in refusing to pay and compensatory damages for breach of contract. The jury verdict was in an amount indicating an award on each count. The opinion stated:

> "The issue to be decided in this case is whether punitive damages may properly be awarded in an action brought by a policyholder of a health insurance plan where the insurance company allegedly wrongfully denied benefits to the insured * * *." 29 Ill. App. 3d 339, 342, 330 N.E.2d 540, 542.

The opinion found the following principles applicable in Illinois:

> "(1) Punitive damages may not be awarded generally in an action on a contract.
>
> (2) However the breach of a contract itself may constitute an 'unusual case where an independent willful tort will be found.'
>
> (3) In the life and health insurer-insured relationship there is a duty upon *both* parties to act in good faith and deal fairly with the other party to the contract.
>
> (4) Breach of this duty implied by law is both a breach of the contract and a tort." (Emphasis supplied.) (29 Ill. App. 3d 339, 350, 330 N.E.2d 540, 548.)

That opinion reversed the award of punitive damages for the reason that the record disclosed a good faith denial of the claim.

*Ledingham* noted that in *Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill. 2d 518, 141 N.E.2d 16, an insurer owed a duty in the context:

> "An insurer who undertakes the defense of a suit against the

insured, where the damages sought are in excess of policy limits, cannot arbitrarily refuse a settlement within policy limits. And the insured can recover the amount of the judgment rendered against him, including the amount in excess of policy limits, when the insurer has been guilty of bad faith in failing to effect a settlement for a smaller sum." (10 Ill. 2d 518, 527, 141 N.E.2d 16, 21.) That opinion does not discuss the liability imposed as a tort but is an action for failure to satisfy a judgment obtained against the insurer. Such would appear to be an action upon the insurance contract.

*Ledingham* also noted *Eckenrode v. Life of America Insurance Co.* (7th Cir. 1972), 470 F.2d 1, as finding a duty of good faith and fair dealing between the insurer and the widow beneficiary of a life insurance policy and determined that a deliberate refusal of payment when it was known to the insurer that the widow was in utter want and compelled to seek charity showed a breach of duty which could be the basis of tort liability. *Eckenrode* acknowledged the privilege of the insurer to "insist upon his legal right in a permissible way."

*Ledingham* examined a series of cases in the Supreme Court of California including *Fletcher v. Western National Life Insurance Co.* (1970), 10 Cal. App. 3d 376, 89 Cal. Rptr. 78, and *Gruenberg v. Aetna Insurance Co.* (1973), 9 Cal. 3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480. The latter case determined that there was an implied duty imposed by law to act fairly and in good faith in discharging its contractual responsibilities with its insured and that the duty was separate and apart from the duties under the insurance contract. It further held that a breach of that duty may give rise to a cause of action in tort.

*Fletcher* was framed as an action in tort for the intentional infliction of emotional distress arising from the alleged breach of the implied duty to deal in good faith. The court, in *Ledingham,* found that the opinion in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, had determined that punitive damages were not available in an action for the intentional infliction of emotional distress. *Ledingham* concluded, however, that punitive damages as in tort may be awarded upon a theory other than an intentional infliction of emotional distress and quoted *Fletcher* to hold that:

" '[T]hreatened and actual bad faith refusals to make payments under the policy, maliciously employed by defendants in concert with false and threatening communications directed to the policyholder for the purposes of causing him to surrender his policy or disadvantageously settle a nonexistent dispute constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered.' " 29 Ill. App. 3d 339, 351, 330 N.E.2d 540, 549.

This complaint contains no allegations of fact purporting to show wilful, vexatious or unreasonable conduct within the context of that statement.

The order of the trial court determined that the complaint as amended "is substantially insufficient in law" and so entered judgment in bar. We must examine the allegations of this complaint to ascertain whether plaintiff has stated a cause of action in tort upon the theory contained in *Ledingham.*

■■ ■ Section 31 of the Civil Practice Act states that "substantial averments of fact [are] necessary to state any cause of action." The complaint at issue alleges as substance that plaintiff made proof of his loss and complied with all terms and conditions of the policy but that defendant failed and refused to pay. In *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101, it was held that an allegation that a contract was made and entered into was a legal conclusion not admitted by a motion to dismiss and affirmed the trial court's dismissal of the complaint. The plaintiff's allegations of performance in this case are not more factual than the allegations in *Pollack* and are properly deemed insufficient as conclusions.

The complaint alleges "The acts of the Defendant * * * were willful and malicious." In *Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 288 N.E.2d 15, plaintiff sought compensatory punitive damages upon an allegation that defendant wilfully and maliciously interfered with plaintiff's contract to sell a business. The reviewing court affirmed dismissal by the trial court saying "a mere averment that an act was done with a certain purpose or intent, without a statement of facts showing such purpose or intent, is a conclusion of law" (7 Ill. App. 3d 486, 491), and the court determined that there was no sufficient allegation of fact to show that defendant acted intentionally and maliciously. In *Alswang v. Claybon* (1976), 40 Ill. App. 3d 147, 351 N.E.2d 285, plaintiff, an attorney, sought compensatory and punitive damages arising from the fact that defendant made a complaint against him before the Ethics Committee of the Bar Association. In affirming the dismissal of the count, the court said:

> "Moreover, we believe that plaintiff failed to plead sufficient facts to support his allegation that defendant's ethics complaint was malicious and made in bad faith. * * * It is well established that an actionable wrong cannot be made out by the vituperous and profuse interpolation of adjectives characterizing an act as having been wrongfully done. The pleading of conclusions alone will not suffice for factual allegations upon which a cause of action must be based." (40 Ill. App. 3d 147, 151, 351 N.E.2d 285, 289.)

We conclude that plaintiff's allegation of wilful refusal to pay comes within that rule.

We have examined certain of the California authorities cited in *Ledingham* to ascertain factual allegations relevant to establishing the cause of action asserted here. In *Fletcher v. Western National Life Insurance Co.* (1970), 10 Cal. App. 3d 376, 89 Cal. Rptr. 78, as here, plaintiff sued upon a disability policy. The court determined that a *prima facie* case for an action in tort arose where the defendant had numerous medical reports establishing the fact of disability; a medical report on a surgical fusion of a vertebra with the medical opinion that it would interfere with employment; defendants knew that plaintiff was unable to work and its investigative report showed that plaintiff was impoverished as the result of such denial of payment while he was unable to work; that defendant misrepresented the fact as to a preexisting defect in discontinuing payment and defendant's offer to compromise plaintiff's claim was conditioned upon a complete release of that claim.

■■ This complaint alleges that plaintiff was obliged to "sell portions of his farm business in order to secure funds for himself and his family* * *." His answers to interrogatories filed in the preceding month said that plaintiff owned 640 acres of land farmed in grain and livestock and that he sold his machinery and livestock in the spring of 1973 because he was unable to continue to farm. The answer continues to say that he has leased his land and receives the income as landlord. The complaint does not allege that defendant was advised of the fact of such sale, and it does not appear that the sale was brought about by the fact that plaintiff had not received disability payments limited to one year. The facts stated in the answer do not allege poverty in the context of *Fletcher* and *Eckenrode.*

We note also that other answers to the same series of interrogatories generally describe plaintiff's injuries as laceration of head, scalp and left hand, fractured ribs and brain concussion, and that the first medical report which would establish disability was delivered to defendant on December 19, 1975, more than three years following the injury.

■■ Plaintiff argues that the trial court erred in denying his oral motion to amend his complaint made at the time of the dismissal and judgment on appeal. The record shows that the complaint was the second amended complaint filed. So far as the record shows, no amendment in writing was tendered to the court and counsel. It is held that there is no presumption that a proposed amendment will be a proper one and that it is error to refuse to leave to amend where there is no basis to determine whether the amendment will be sufficient to state a cause of action. (*People ex rel. Scott v. Cardet International, Inc.* (1974), 24 Ill. App. 3d 740, 321 N.E.2d 386; *Hancock v. Luetgert* (1976), 40 Ill. App. 3d 808, 353 N.E.2d 165.) We can find no abuse of discretion in the denial of the oral motion.

In *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d

373, the reviewing court sustained a dismissal of the complaint which sought punitive damages. While this opinion does not reach that issue we note that that court declined to follow the opinion in *Ledingham* upon the conclusion that the legislature had established a remedy where it was alleged that a refusal to pay was unreasonable and vexatious. Section 155 of the Insurance Code (Ill. Rev. Stat. 1975, ch. 73, par. 767), in effect at the time of this action as it was in *Debolt,* provided that where "refusal is vexatious and without reasonable cause," the court may allow reasonable attorney's fees to be taxed as costs and in an amount not to exceed 25 percent of the sum which plaintiff is entitled to recover, or $1000. That court concluded that since the legislature had provided a statutory remedy, the court did not have the power to provide an additional cause of action, citing *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352.

The judgment is affirmed.

Affirmed.

Mr. PRESIDING JUSTICE MILLS, concurring in part and dissenting in part:

This case should not be disposed of on the basis of procedure or pleadings. We should meet the issue headon.

I concur in the result of affirmance, but for a different reason. The dissent is correct in my judgment about the pleadings. They were somewhat scanty, to be sure, but in this enlightened age of liberal pleading construction and a commendable tendency to permit sufficient amendment to either be more specific or otherwise comply with objections, the allegations here look to me adequate to at least stay in the ballpark. To this extent I agree with the dissent—the adequacy of the amended complaint does not bother me.

But the question of punitive and compensatory damages in tort for a wilful refusal to pay under a contract does give me concern. I have weighed and compared *Ledingham* and *Debolt,* by the pound and by the paragraph, and finally conclude that the opinion in *Debolt* is more sound and more persuasive. It strikes me that statutory causes of action, being creatures of the legislative branch, should be viewed with judicial restraint. The *Debolt* rationale of legislative preemption in this area—by recovery of reasonable and limited attorney's fees—is cogent and convincing. Adequate remedy? Perhaps not. But as was said by the *Debolt* court, "It may well be that the statutory remedy should provide greater relief but we hold that to be a matter for legislative determination." 56 Ill. App. 3d 111, 117, 371 N.E.2d 373, 378.

Any further words would be overkill. It will suffice to conclude that I agree to affirm because there can be no tortuous recovery on a contract

beyond the statutory prescriptions, the legislature having preempted the field.

I concur in the result.

Mr. JUSTICE CRAVEN, dissenting:

I disagree with the result reached and dissent from the order affirming the action of the trial court. The principal opinion by Mr. Justice Trapp affirms upon an apparent pleading basis. That opinion seems to avoid the substantive issue. This business about the insufficiency of the complaint and the pleading of conclusions as discussed in the principal opinion appears not to have been a matter of any concern in the trial court and was not even involved in the decision reached.

Mr. Justice Mills and I are in agreement that the pleadings are sufficient. We part company upon whether or not there is a cause of action in tort for an intentional and wilful refusal to pay a contractual obligation.

The opinion of the appellate court in *Ledingham v. Blue Cross Plan for Hospital Care* (1975), 29 Ill. App. 3d 399, 330 N.E.2d 540, is clear authority for the proposition that there is a cause of action sounding in tort for a wilful and intentional refusal to pay a clear contractual obligation. This complaint, with more specificity than the one in *Ledingham*, states such a cause of action. See also R. Teeple, *When, If Ever, Are Punitive Damages Recoverable In An Illinois Contract Action?* 65 Ill. B.J. 152, 158 (1976).

I would reverse and remand with directions to reinstate the complaint.