Michael and Sheri **LANGENDORF, Plaintiffs,**

v.

**TRAVELERS STATE INSURANCE COMPANY, Defendant.**

**No. 85 C 5134.**

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1985.

Mark D. DeBofsky, DeBofsky & DeBofsky, Chicago, Ill., for plaintiffs.

H. Patrick Morris, Johnson, Cusack & Bell, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Michael and Sheri Langendorf, plaintiffs, have brought this six-count diversity action challenging the refusal by its insurer, Travelers State Insurance Company ("Travelers") to pay health insurance benefits under a group insurance policy. Travelers is alleged to be organized under the laws of Connecticut, where it has its principal place of business. The Langendorfs are alleged to be residents of Illinois. The amount in controversy, exclusive of interest and costs, exceeds $10,000.00.

Plaintiffs have alleged the following facts which, for purposes of the present motion to dismiss, the court accepts as true. On September 16, 1983, Travelers issued a group insurance policy to the Oak Park Therapeutic School, Inc. Sheri Langendorf was a member of the group covered by this plan. On September 16, 1983, Sheri Langendorf gave birth to a daughter. Shortly thereafter she suffered severe complications due to her pregnancy which required extensive medical treatment. She was rehospitalized for approximately six months, incurring hospital and medical expenses of approximately $115,000.00. Pursuant to the insurance policy which provided for unlimited medical and hospital care benefits, the Langendorfs requested that Travelers pay the expenses of the hospital

stay. Travelers stated they would pay only $50,000 of the expenses incurred, claiming there was a $50,000 limit on the benefits payable. The Langendorfs made further demands on Travelers for payment of the $65,000 balance, all of which have remained unfulfilled. Presently before the court is Travelers' motion to dismiss Counts II, V and VI of the complaint.

## Count II

In Count II, the Langendorfs claim that Travelers' refusal to pay was an "improper claims practice" proscribed by Section 154.6 of the Illinois Insurance Code, Ill. Rev.Stat. ch. 73, ¶ 766.6. The Langendorfs urge that any conduct in violation of the practices described in § 154.6 entitles them to recover for their damages, costs, attorneys' fees and receive any other appropriate relief. In relevant part, the statute provides that:

> Any of the following acts by a company, if committed without just cause and [committed knowingly or frequently,] constitutes an improper claims practice:
>
> (d) Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;
>
> (h) refusing to pay claims without conducting a reasonable investigation based on all available information.

Ill.Rev.Stat. ch. 73, ¶ 766.6.

■ Travelers argues that this count should be dismissed because § 154.6 provides no private right of action but simply defines those practices for which the Illinois Director of Insurance may issue a cease and desist order under § 154.8 of the Insurance Code, Ill.Rev.Stat. ch. 73, ¶ 766.-8. The Illinois Supreme Court has not yet decided this issue. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in a diversity action, when the highest state court has not yet spoken on an issue, a federal district court is obligated to predict what that court would do if presented with the issue. See *White v. United States*, 680 F.2d 1156, 1161 (7th Cir.1982); *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661

(3rd Cir.) *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Barr Co. v. Safeco Insurance Co.*, 583 F.Supp. 248, 252 (N.D.Ill.1984). Accordingly, the court observes that all Illinois appellate courts agree that § 154.6 provides no private right of action. It is a public remedy to be pursued only by the Director of Insurance. *See, e.g., Tobolt v. Allstate Insurance Co.*, 75 Ill.App.3d 57, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1st Dist.1979); *Hamilton v. Safeway Insurance Co.*, 104 Ill.App.3d 353, 60 Ill. Dec. 97, 432 N.E.2d 996 (1st Dist.1982); *Hoffman v. Allstate Insurance Co.*, 85 Ill.App.3d 631, 40 Ill.Dec. 925, 407 N.E.2d 156, *appeal denied*, 81 Ill.2d 602 (1980); *Van Vleck v. Ohio Casualty Insurance Co.*, 128 Ill.App.3d 959, 84 Ill.Dec. 159, 471 N.E.2d 925 (3d Dist.1984). Under these circumstances, the court finds itself compelled to adopt this view as it assumes the Illinois Supreme Court would follow the approach consistently taken by its appellate courts. *See West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940) (Federal courts should not disregard uniform state appellate court results absent persuasive data that the highest state court would decide otherwise.)

The Langendorfs argue that this court should not conclude that the Illinois Supreme Court would in fact approve of the approach that its appellate courts have repeatedly taken. They argue that an implied private cause of action is maintainable under *Sawyer Realty Group Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 59 Ill.Dec. 905, 432 N.E.2d 849 (1982). In *Sawyer*, the Illinois Supreme Court recognized an implied private right of action for violations of the Brokers Licensing Act, Ill.Rev.Stat. ch. 111, ¶ 5701 et seq. Specifically, the court stated that Illinois "courts have continuously demonstrated a willingness to imply a private remedy where there exists a clear need to effectuate the purpose of an act." 89 Ill.2d 379, 389, 59 Ill.Dec. 905, 432 N.E.2d 849. *Sawyer*, however, is inapposite to the case here. As *Sawyer* itself stated, Illinois courts will imply a private

right of action only where it is *necessary* to achieve the aims of the statute. Since the Insurance Code, in § 154.8, empowers the Director of Insurance to issue cease and desist orders against any insurer that commits an act proscribed by § 154.6, an implied private right of action is not necessary. *See Abbott Laboratories v. Granite State Insurance Co.*, 573 F.Supp. 193, 196 (N.D.Ill.1983); *UNR Industries Inc. v. Continental Insurance Co.*, 607 F.Supp. 855 (N.D.Ill.1984). The Langendorfs' suggestion that, to their knowledge, there are no reported cases brought by the Director of Insurance against insurers does not in itself suggest the public remedy is inadequate. Even if this lack of prosecution were true and without justification, it would seem to this court that the proper solution would be to replace the lax Insurance Director. While it might be easier on plaintiffs to ask this court to imply a private cause of action than to seek replacement of the director, the court has no power to do this in light of the consistent holdings of the Illinois appellate courts denying the private claim and the absence of any evidence that the Illinois legislature wanted the "private attorney general" concept extended to the Insurance Code. Accordingly, the court dismisses Count II.

### Count V

Count V is somewhat difficult to evaluate on this motion to dismiss because of the way it is drafted and the way the parties have argued it. Taken at face value, the count alleges that Travelers' refusal to pay resulted in "numerous and repeated demands for payment from health providers" and caused the Langendorfs severe and extreme emotional distress and humiliation. Furthermore, Travelers' refusal to pay was "extreme and outrageous in that it was reasonably calculated to cause" the Langendorfs severe distress. As a result of the distress, the Langendorfs have suffered "loss of sleep, appetite, anxiety and distress."

The court perceives three possible interpretations of this count and will therefore assess the count's ability to survive the motion to dismiss under each interpretation. The first interpretation is simple: Travelers breached its contract with the Langendorfs by refusing to pay benefits when it was supposed to; the damages that the Langendorfs suffered include not merely the denial of the $65,000 contractual benefits, but also the consequential injury of emotional distress. The court does not now decide whether, under Illinois law, the consequential injury of emotional distress is compensable on an insurance contract claim. At this point, the court simply considers the contract-based consequential injury of emotional distress to have been well pled by the plaintiffs. If, on a later motion, Travelers wishes to argue that this sort of injury is not recognized as a compensable consequential remedy, then the court will consider arguments at that time.

The second possible interpretation of Count V is that the count purports to state a claim under the tort of intentional infliction of emotional distress. This interpretation cannot survive Travelers' motion to dismiss because this court follows the reasoning of *Anderson v. Mutual of Omaha Insurance Co.*, 594 F.Supp. 726 (S.D.Ill. 1984), where it was held that § 155 of the Illinois Insurance Code preempts the tort of intentional infliction of emotional distress resulting from an insurer's outrageous delay in settling a claim.

Section 155 of the Illinois Insurance Code provides in relevant part that

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorneys fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of costs;

(b) $5,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

Ill.Rev.Stat. ch. 73, ¶ 767. *Anderson* considered the effect of § 155 on the tort of intentional infliction of emotional distress in light of the Illinois Supreme Court holding in *Robertson v. Travelers Insurance Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983). *Robertson* held that the provisions of the Illinois Workmen's Compensation Statute barred tort claims for intentional infliction of emotional distress which resulted from an insurer's outrageous conduct in delaying the payment of a worker's claim. The Illinois Supreme Court reasoned that the legislature, anticipating that bad faith in delaying payments of benefits would occur on occasions, provided a quick and readily accessible method of resolving disputes over such delayed payments. The court held that the term "vexatious", as used in the statute, encompassed both ordinary and malicious delay, thereby precluding any common law tort based on malicious delay. *Anderson* analogized from the Illinois Supreme Court's interpretation of the Workmen's Compensation Statute and held that the terms "vexatious and unreasonable" as used in § 155 also encompass ordinary as well as malicious delay, thereby preempting the tort of intentional infliction of emotional distress from delayed payments. Thus, to the extent that Count V attempts to state a claim for the intentional infliction of emotional distress, it is preempted by § 155 which provides the exclusive remedy for that tort, and is therefore dismissed.

■ Even if *Anderson* did not, as a matter of law, bar the Langendorfs from stating the common law tort of intention infliction of emotional distress, this court would still dismiss this interpretation of Count V because the count, on its face, fails to allege the essential elements of a claim for emotional distress. To state a cause of action for the tort of intentional infliction of emotional distress, a plaintiff must allege facts which demonstrate (1) that the defendant's conduct was extreme and outrageous; (2) that plaintiff's emotional distress was severe; and (3) defendant's condut was such that defendant knew that severe emotional distress would be certain or substantially certain to result. *Smith v. Metropolitan Life Insurance Co.*, 550 F.Supp. 896, 901 (1982), citing *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 4 Ill. Dec. 652, 360 N.E.2d 765 (1976).

The allegations in the Langendorfs' complaint do not meet the first element of this tort because they do not describe conduct on Travelers' part which is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." Restatement (Second) of Torts, § 46 comment d. Essentially, the complaint here alleges nothing more than a dispute regarding coverage of an insurance policy. To be sure, that dispute may have caused the Langendorfs extreme grief. But Travelers may honestly have believed that it had no obligation to pay what the Langendorfs demanded, and the Langendorfs do not allege otherwise anywhere in their complaint. In the absence of an alleged breach by Travelers where Travelers knew that it had an obligation to pay but nevertheless maliciously and unjustifiably chose not to pay, this court cannot see how the first element of the tort of intentional infliction of emotional distress in this context can be satisfied.

■ The third and final interpretation of count V is that the count purports to state a claim for the breach of the implied duty of good faith and fair dealing and, as a result of the breach of this duty, the Langendorfs have suffered severe emotional distress. Before deciding whether plaintiffs' pleadings properly allege the elements of the tort of breach of the duty of good faith dealing, the court notes defendant's argument that this tort, whatever its elements, is preempted by § 155 of the Insurance Code. This court has recently held in *Sheinfeld v. American Family Mu-*

*tual Insurance Co.,* 624 F.Supp. 698 (1985), that § 155 only preempts a recovery for punitive damages from a breach of that duty. Therefore, the Langendorfs' claim for punitive damages is dismissed. Their claim for compensatory damages, however, survives Travelers' motion to dismiss if and only if the elements of the tort are correctly alleged.

Courts have not been particularly clear about what is required to state a claim for the breach of the duty of good faith dealing. The duty was originally recognized in the context of a "duty to settle" where an insurer has undertaken the defense of a suit against the insured and the damages sought in the suit are in excess of policy limits. In such a situation, the insurer "cannot arbitrarily refuse a settlement within policy limits" without being "guilty of bad faith in failing to effect a settlement for a smaller sum." *Krutsinger v. Illinois Casualty Co.,* 10 Ill.2d 518, 141 N.E.2d 16 (1957).

The tort has also been recognized where the insurer, after paying an insured for a loss incident to damaged property, physically prevented the insured from getting an independent appraisal of the property by hiding the damaged property. *Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d 631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2d Dist. 1980). *Hoffman* referred to *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.,* 29 Ill.App.3d 339, 350, 330 N.E.2d 540 (1975), which, while cited by the Illinois Supreme Court with approval in *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 187, 23 Ill.Dec. 559, 566, 384 N.E.2d 353, 360 (1978), did not clearly spell the elements that constitute the tort of bad faith. *Ledingham* did, however, suggest that false statements and maliciousness were needed. 330 N.E.2d at 549.

This case is different from *Hoffman* and *Krutsinger* because here the Langendorfs are claiming that the simple breach of contract itself amounted to a breach of the duty of good faith dealing. *Hoffman* and *Krutsinger* involved conduct, other than a refusal to pay on a contract, which injured the plaintiffs. In *Hoffman,* the plaintiff was prevented from confirming whether the contract payment was legitimate. In *Krutsinger,* the defendant paid on the contract but caused the plaintiff to pay a third party more than it should have had to. Therefore, this court must determine whether a mere breach of contract payment terms, as is all that has been alleged here, is enough to amount to the tort of bad faith dealing, or whether more is required. In doing so, the court bears in mind that a motion to dismiss for failure to state a claim should be granted only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). In deciding the motion, the court must presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-movant. 2A Moore's Federal Practice, ¶ 12.07[2.–5] (2d ed. 1985). Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ The case authority appears to suggest that a mere innocent breach of contract—where the party in breach innocently, albeit erroneously, believes that he has no obligation to pay—is not sufficient to state a claim under the tort of the duty of good faith dealing. *Florsheim v. Travelers Indemnity Co.,* 75 Ill.App.3d 298, 310, 30 Ill.Dec. 876, 886, 393 N.E.2d 1223, 1233 (1st Dist.1979). Instead, at least two further elements must be alleged. First, the insurer must have known it was liable on the contract but nonetheless refused to pay. *See Barr v. Safeco Insurance Co. of America,* 583 F.Supp. 248, 259 (N.D.Ill. 1984); *UNR Industries, Inc. v. Continental Insurance Co.,* 607 F.Supp. 855 (N.D. Ill.1984) (allegations of insurers misleading the insured as to the availability of full indemnification under the policies). Sec-

ond, the insurer must also know that if it did not pay on its policy, substantial damage and injury would likely befall the insured. *See Barr v. Safeco Insurance Co.,* 583 F.Supp. at 259; *Urfer v. Country Mutual Insurance Co.,* 60 Ill.App.3d 469, 17 Ill.Dec. 744, 376 N.E.2d 1073 (4th Dist. 1978).

Here, the Langendorfs have failed to allege at least the first of these two elements. Nowhere in their complaint have they claimed that Travelers knew it was liable on the contract but nevertheless refused to pay. The Langendorfs allege only that "Travelers imposed an interpretation of the policy to place a $50,000.00 limit on the benefits payable." Complaint at ¶ 12. Absent an allegation to the effect that Travelers knew that its interpretation was wrong, the first element of the bad faith tort cannot be gleaned from this complaint.

The second element of the tort has been more successfully alleged, albeit in conclusory form. In paragraph 16 of the complaint, the Langendorfs state that Travelers' denial of the claim "was reasonably calculated to cause" the Langendorfs severe emotional distress. This suggests that Travelers knew that nonpayment would cause the Langendorfs great injury. While the form of this allegation may be too conclusory to survive a motion to dismiss, the court need not decide this because the first element of the tort is totally absent.

In sum, Count V is dismissed to the extent that it attempts to state a claim for the tort of breach of the duty of good faith dealing. Even if both elements of that tort were stated, the prayer for punitive, though not compensatory, damages would be preempted by § 155. Count V is fully dismissed to the extent that it states a claim for the intentional infliction of emotional distress. The only way in which Count V survives under the complaint as it is now written is as a claim for consequential damages arising from the breach of contract. Because this issue has not been argued, ths court considers it unresolved.

### Count VI

Count VI alleges that as "a direct and proximate result of" Travelers nonpayment "plaintiffs have been injured in their credit standing and reputation, which was previously excellent, due to suit for collection and reporting of debts to credit agencies and bureaus." Complaint at ¶ 15. Similar to its analysis of Count V, the court perceives two possible interpretations of this count. First, it purports to state another consequential damage from the breach of contract, and second, it purports to state another injury incurred as a consequence of the breach of the duty of good faith and fair dealing.

As to the first interpretation, the court once again simply states that the issue has not been argued, and reserves for another day decision on whether loss of credit can be recovered as a consequential damage to the breach of an insurance contract in the context of this case.

On the second interpretation, the court finds that the Langendorfs have failed to allege either of the two elements of the tort of bad faith dealing identified in the court's discussion of Count V. Specifically, the Langendorfs do not allege in any fashion, conclusory or otherwise, that Travelers knew of its liability on the contract or that Travelers knew that a loss of credit would result from nonpayment of the claim. Even if the insurance company is to be put on constructive notice that nonpayment leads to a credit loss, an issue which the court does not now decide, the absence of an allegation of Travelers' subjective knowledge of liability is fatal to this count, as it was to Count V. However, as in the case of Count V, if the Langendorfs had properly alleged the elements of the tort, then the court would follow its holding in *Sheinfeld v. American Family Mutual Insurance Co.* and allow the Langendorfs to seek compensatory damages arising out of that breach, but not punitive damages.

### CONCLUSION

In accordance with the qualifications noted above, the court grants defendant's motion to dismiss Counts II, V, and VI.

It is so ordered.