## Interstate Casualty Company v. Wallins Creek Coal Company.

(Decided May 20, 1915.)

### Appeal from Bell Circuit Court.

1. Insurance—Indemnity Insurance—When Insured May Settle Claim Without Direction of Insurer and Recover Amount Paid.—Where an employe was injured by the negligence of the employer, and the accident was covered by the employer's liability policy, the insured, upon the failure of the insurer to notify him in reasonable time what it wished to do in respect to the claim, had the right to assume that it denied its liability, and to make a settlement on reasonable terms with the injured party, and bring a suit against the insurer to recover the amount so paid, notwithstanding there was a clause in the policy that no settlement should be made by the insured unless authorized in writing by the insurer.

2. Insurance—Indemnity Insurance—Construction of Contract.— Where a contract of indemnity insurance provides that the insured shall not make any settlement unless authorized in writing by the insurer, it is the duty of the insurer, upon receiving notice of the accident, to advise the insured, within a reasonable time thereafter, whether it denies liability, or what action if any it desires him to take to compromise or settle the claim presented by the injured party; and if it fails to do this, the insured may settle the claim upon reasonable terms and recover from the insurer the amount paid.

3. Insurance—Indemnity Insurance—Denial of Liability—What Is.— If the insurer specifically denies liability but is in fact liable, the insured may settle the claim on reasonable terms and recover the amount paid from the insurer; or if the insurer, after having notice of the accident and injury, fails to take any action whatever in respect to it, the insured may treat this inaction as a specific denial of liability with the same effect.

METCALF & JEFFRIES for appellant.

PATTERSON & INGRAM for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee coal company carried employers' liability insurance in the appellant company. While this policy was in force, and in August, 1912, John Miller, an employe of the coal company, was injured through its negligence in. an accident, and soon thereafter the coal company settled his claim for damages growing out of the injury by the payment to him of $336, having previously expended in care and attention given him $59.01, making the total amount paid out $395.01. To recover this sum it brought this suit against the casualty company, and the law and facts having been submitted to the court, there was a judgment in its favor for the full amount claimed.

The trial court, separating the conclusions of law and fact, found the facts to be: (1) That Miller's injuries were brought about by defects in the machinery with which he was working, and that the coal company was liable to him in damages; (2) that the coal company notified the casualty company in proper time and manner of the accident to Miller; (3) that the casualty company sent an inspector to investigate the accident, and after he had investigated it, it was, in substance, agreed between the inspector and the president of the coal company that if Miller brought suit he would likely recover damages for as much as two thousand dollars; (4) that the casualty company did not at any time authorize the coal company to make any settlement with Miller, nor did it notify it not to do so; (5) that the coal company was authorized under the contract of insurance to pay the $59.01 for surgical attention and care to Miller.

On these facts the court found, as a matter of law, (1) that the coal company was liable to Miller in damages, and that the casualty company had obligated itself to indemnify the coal company to the extent of five thousand dollars; (2) that the coal company had the right, under the facts, to settle the case, and that the settlement made was reasonable and such a settlement as a prudent, careful business man would have made.

From this judgment the casualty company appeals. We do not, however, understand that it seriously denies its liability for the $59.01 expended by the coal company in giving Miller medical and other attention immediately after the accident, as it was authorized by

the policy contract to provide such immediate relief, and so we need not notice further the claim for this amount.

The coal company paid Miller, in settlement of his claim for damages, $336, not including the $59.01, and assuming that the payment of this sum was a reasonable settlement and such a one as a prudent, careful business man would have made, the only question left open for decision is, whether the casualty company should be made liable to the coal company for any part of this $336 in view of the fact that the coal company was not authorized by the casualty company to make the settlement. The solution of this question depends upon the proper construction of certain clauses in the policy contract as well as upon certain facts appearing in the record. But before looking to the contract and the facts affecting the liability of the casualty company, it may be stated that we accept as correct the finding of the lower court that Miller had a valid and enforceable claim for damages against the coal company and such a claim as the coal company was indemnified against by the contract of insurance, to the extent of five thousand dollars.

The contract stipulated that the company "Is not responsible for any settlement made, or any expenses incurred by the assured, unless such settlements or expenditures are first specifically authorized in writing by the company; except that the assured may provide at the time of the accident, at the expense of the company, such medical and surgical relief as is imperative."

Another clause in the contract provided that "Immediate written notice of any accident and of any suit resulting therefrom, with every summons or other process, must be forwarded to the home office of the company, or to its authorized representative." It was further provided that "The company will, at its own cost * * * investigate all accidents and defend all suits, even if groundless, of which notices are given to it as hereinafter required, unless the company shall elect to settle the claim or suit."

Miller was injured on August 15, 1912, and the casualty company was at once notified of the accident and injury in the manner and form provided by the policy contract. After this the casualty company sent an inspector to investigate the matter, and the inspector,

after making an investigation, told the president of the coal company that "it looked like a bad accident, and if it got to a jury, Miller was likely to get big damages." This inspector, however, did not advise the officers of the coal company to settle the claim, nor did he tell them not to settle it, his remarks being confined to the expression of an opinion that it was a bad case and that Miller might get large damages.

It is further shown that the settlement made by the coal company with Miller was not made until November 24, 1912, and that between the date of the injury and the time of this settlement the casualty company did not do anything in the matter except to investigate the accident and injury. Nor did it at any time between the date of the injury and the date of the settlement made by the coal company advise the coal company to compromise or settle the claim with Miller, or not to do it. In fact, aside from its investigation of the accident and injury, it did not do or say anything towards adjusting the claim or advising the coal company what action it wished it to take.

There is an intimation in the evidence, as well as an admission by counsel, that the casualty company, acting on the advice of its attorney, concluded that there was no liability on its part, and doubtless acting upon the assumption that it was not liable, it neglected or failed to give to the matter the prompt attention contemplated by the policy and also necessary to protect the rights of the coal company.

Under these facts, we think the casualty company, notwithstanding the stipulation in the contract that it should not be responsible for any expenses incurred in settlement of claims unless it authorized them in writing, should be held liable to the coal company for the amount it paid in settlement of this claim.

When an insurance company issues an indemnity policy like the one here in question, and an injury happens for which it must indemnify the insured, justice to the insured requires that the insurance company should, upon receiving notice of the accident and injury, determine as speedily as the circumstances of the case will permit whether it wishes the insured to settle or contest the claim for damages, and notify the insured of its desire. The claim might be of such a character as that the amount of damages recovered in a law suit

by the injured party would exceed the indemnity and subject the insured to considerable loss and damage, and, therefore, the insured should have a right to know with reasonable promptness the attitude of the indemnity company, so that he might be in a position to take such action as would not only protect the indemnity company, but save himself from loss and damages.

The letter of the policy contract gives to the insurance company the right to control the conduct of the insured in respect to the adjustment of any claim for damages that may be presented. It has the right to deny its liability entirely, or to insist that the claim for damages shall be contested, or to advise that it be adjusted or settled in some way. Having this power of control over the matter, it should not be allowed by inaction or indifference to prejudice the rights of the insured. If it denies its liability, it should say so, and if it admits its liability, it should advise what steps it wants the insured to take. Unless it does one of these things with reasonable promptness, the insured, by its indifference to its rights, is placed at a disadvantage that it ought not to be subjected to. For example, the insured might within a reasonable time after an accident has occurred for which it admits its liability, and which is covered by its indemnity policy, be able to compromise and settle the claim for a reasonable sum, thus saving the annoyance of having the claim in an unsettled condition and the expense that would follow litigation, and also the loss that might be incurred if the claimant succeeded in recovering more than the indemnity provided.

In this case the insured, after waiting more than three months for the indemnity company to direct what it wished done, considered it advisable to compromise the claim. The settlement with the claimant was made in good faith, upon reasonable terms, and was such a settlement as a prudent, careful business man would have made. Under these circumstances, the provisions in the policy contract prohibiting a settlement unless directed in writing, should be considered waived, and the insurance company estopped to rely on the provisions to defeat a recovery by the insured upon the ground that the insured settled the claim without its authority.

If, under facts similar to those appearing in this case, an indemnity company could escape liability under

the clause in its contract that it should not be liable for expenses incurred without its consent, by failing or refusing to do or say anything to the insured that would indicate its wishes, it would be an easy matter for an indemnity company, under a contract like the one here involved, to relieve itself from all liability by simply failing or refusing to do or say anything after it had received notice of an accident and injury for which it was liable. Such a construction of the contract would enable the insurance company to perpetrate an intolerable fraud on the insured and make it, if allowable, an easy matter to avoid liability in any case in which it chose to pursue this course. The contract should be so construed as to afford protection to both parties, not giving either the right to subject the other to unnecessary loss or expense. The insured under it cannot bind the insurer by unauthorized settlements if the insurer declines to make a settlement within a reasonable time after it has notice of the claim, nor should the indemnity company be allowed by its indifference or non-action to subject the insured to unnecessary loss and expense that might have been avoided if it had acted with reasonable promptness. Each of the parties to a contract like this has rights that the other must respect, and neither can by negligence or indifference or failure to act violate the spirit of the contract in such a way as to put upon the other loss that it need not have suffered.

There seems to be a dearth of authority dealing with the question before us, and we have not been able to find any decision precisely in point. However, the case of St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U. S., 173, 50 L. Ed., 712, lays down certain principles that may well be extended to influence the decision of this case. In that case the provision company had a policy of indemnity in the casualty company protecting it against loss for damages on account of bodily injuries suffered by any person through its negligence. The policy provided, among other things, that the assured should give immediate notice, with full particulars, of any accident. Also that the casualty company would defend any suit that should be brought against it or settle the same. There was a further provision that "The assured shall not settle any claim, except at his own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal

proceeding, without the consent of the company, previously given in writing;'' and another that ''No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of judgment after trial of the issue.''

It appears from the opinion that the assured became liable for damages on account of injuries sustained by a party through its negligence, and it immediately gave the notice required by the policy contract. After this the insurance company notified the assured that it denied liability on account of the damages resulting from the accident. Thereafter the injured party brought suit against the assured to recover damages for the personal injuries sustained, and the insurance company was notified of the institution of this suit, but declined to undertake the defense, upon the ground that its policy contract did not cover the liability. It further appears that the assured, apprehending that if the case went to trial there might be a judgment for a large amount, compromised the suit by paying the claimant a reasonable sum and such a sum as a prudent, careful business man would have paid in settlement of the claim. After this the assured brought suit against the casualty company to recover the amount so paid. The Circuit Court of Appeals certified to the Supreme Court for its decision the following questions, the substance of which is: (1) Did the denial of all liability by the assurer and its refusal to defend the suit release the assured from its agreement that it would not settle any claim except at its own cost without the consent in writing of the assurer, and also from the clause that the assurer should not be liable except for loss actually sustained by the assured in satisfaction of a judgment after trial of the issue? (2) Were the provisions that the assured should not settle any claim except at its own cost without the written consent of the assurer, and that no action should lie against the assurer unless brought to reimburse the assured for loss actually sustained and paid by it in satisfaction of a judgment after trial of the issues, waived by the assurer's denial of liability and its failure to defend the suit?

The Supreme Court, in answering these questions, held that the insurance company, by denying liability

and failing to defend the suit, waived its right to rely on the stipulations in the policy contract exempting it from liability if the assured, without its written consent, settled any claim, or unless the assured paid the amount asserted against it in satisfaction of a judgment after a trial.

The conditions in the policy contract in that case were identical with the ones in the policy contract here involved, and the only difference in the facts is that in that case the company advised the insured that it denied liability and the insured did not settle the claim until after suit had been brought; while in this case there was no express denial of liability to the insured, and the loss was settled before suit was brought. This difference, however, in the facts is not a substantial one, as the insurance company in this case, by its failure, or rather its refusal, to direct the insured what it wished done, in effect denied its liability. In other words, it made up its own mind that it was not liable, and then concluded that it would not give the matter any further attention and that the insured could do what it pleased. Under these circumstances the insured had the right to treat this inaction of the insurance company as a denial of liability on its part, and to act on the assumption that it would further refuse to recognize its liability by failing to undertake to defend any suit that the injured party might bring, and to make the best settlement it could.

Another case supporting the conclusion we have reached is Southern Ry. News Co. v. Fidelity & Casualty Co., of New York, 26 Ky. L. R., 1217. In that case, which was a suit by the insured to recover on a policy of indemnity similar to the one here in question, the court said that the news company, "after having notified the casualty company that the liability had been incurred by reason of the injury, was bound to make the loss as small as possible so far as it reasonably could, although the casualty company did not avail itself of the provision in the policy to personally conduct the defense to the suit. The news company might have compromised the claim, so that it acted in good faith and with reasonable prudence, such as a prudent person similarly situated would have done for himself. This would have bound the casualty company to pay to it the loss actually sustained, of which the compromise, if one was

effected, as is charged, may have been taken into consideration as evidence of the actual loss sustained, but, of course, not conclusive evidence of it. Other evidence might also be admitted to show whether it was or was not a judicious and fair settlement.''

It may be said that the insured should have notified the insurance company that it intended to make a settlement or that it should have called on it specifically to direct what it wished done. But we do not see how its failure to do this affects in any material way its right to the recovery here sought. If the insurance company, in response to a notice from the insured, had expressly denied its liability, we have no doubt that the insured might have effected a reasonable settlement of the claim and recovered from the insurance company the amount paid in settlement, provided, of course, the liability was covered by the policy and the injured party had an enforceable claim against the insured. This being so, we perceive no reason why, under the facts of this case, the rights and liabilities of the parties are not the same as if there had been a specific denial of liability by the insurance company and refusal on its part to take any further notice of the accident or injury.

Wherefore, the judgment is affirmed.