CLARENCE R. OTTEMAN, APPELLEE. V. THE INTERSTATE FIRE & CASUALTY CO., INC., A CORPORATION, APPELLANT.

111 N. W. 2d 97

Filed October 13, 1961. No. 35007.

*William G. Line,* for appellant.

*Spear, Lamme & Simmons,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action by Clarence R. Otteman, an insurance agent, hereinafter referred to as plaintiff, against Interstate Fire & Casualty Co., Inc., hereinafter referred to as defendant, upon a policy covering claims arising from errors and omissions the plaintiff might commit as an insurance agent. Trial was had to the court without a jury and judgment was entered for the plaintiff. Defendant appeals.

This case was previously before the court on the vacation of a summary judgment. Otteman v. Interstate Fire & Cas. Co., Inc., 171 Neb. 148, 105 N. W. 2d 583. The trial court originally sustained a motion filed by the defendant for summary judgment. At the same term of court, the judgment was vacated. An appeal was taken to this court by the defendant and was dismissed for the reason that the vacation of the summary judgment was not an appealable order. The defendant's first three assignments of error and much of the argument in its brief relate to the vacation of the summary judgment. The defendant apparently does not appreciate that the court examines the evidence on a motion for a summary judgment, not to decide any issue of fact present but *solely* to discover if any real issue of fact exists. If there is an issue of fact to be determined, a summary judgment cannot be entered. Healy v. Metropolitan

Utilities Dist., 158 Neb. 151, 62 N. W. 2d 543.

It will be apparent from what is said hereafter that a material issue of fact was present in this record. As already noted, the trial court found for the plaintiff on the evidence adduced. Suffice it to say that the summary judgment procedure is not intended to be used as a device to prevent a trial on the merits but is available *only* when no genuine issue of fact exists.

The plaintiff in 1953, through the Reynolds General Agency at Fremont, Nebraska, secured an insurance brokers and agents errors and omissions policy issued by the defendant. Through renewals, this policy was maintained in full force and effect until December 7, 1960. On January 22, 1957, one Voss applied to the plaintiff as an agent for the Farmers Mutual Insurance Company of Nebraska for the renewal of a policy of fire insurance in that company on certain personal property, including a tractor and a cornpicker. The plaintiff through error failed to send the application to the Farmers Mutual Insurance Company and the insurance policy then in force was not renewed. The plaintiff did not collect or remit a premium for the renewal. The plaintiff had been writing insurance for Voss for several years. The usual procedure was for the plaintiff to pay for the insurance when billed by the company at the end of the month. He would then bill Voss after the policy was issued. However, no bill was ever rendered to Voss in this instance.

On October 18, 1958, the tractor and the cornpicker owned by Voss were damaged by fire. Voss filed a claim for $1,433.37 with plaintiff as agent for the Farmers Mutual Insurance Company. When the claim was forwarded to the company the plaintiff discovered his failure to secure the renewal and subsequently found the original application in his office files. On November 20, 1958, the Farmers Mutual Insurance Company refused the claim for the reason that the Voss property was not insured. The plaintiff then notified the Reynolds

General Insurance Agency that Voss was making claim against him for the loss. On November 21, 1958, that agency wrote the managing agent for defendant about the loss and requested proper forms to process it. No reply was received. The agency wrote again on December 1, 1958, December 11, 1958, and June 15, 1959. The Reynolds General Insurance Agency never received a reply to any of its letters despite the fact that it also filed two complaints with the Department of Insurance of the State of Illinois because of the failure of the defendant to reply.

William G. Line, defendant's attorney, who was called as a witness on behalf of plaintiff, testified that he was appointed as attorney for the defendant on December 11 or 12, 1958, and that he wrote the plaintiff at once. The defendant's testimony indicates that the plaintiff visited Line's office 11 times about the claim between December 12, 1958, and July 18, 1959. Line testified that he never inspected the loss; that the plaintiff brought him two estimates on the loss; and that the plaintiff brought Voss to his office. He further testified that he wrote the defendant about the matter on eight occasions as follows: December 16, 1958; December 19, 1958; February 26, 1959; March 27, 1959; June 19, 1959; July 20, 1959; July 22, 1959; and September 30, 1959. The only replies he received were on February 23, 1959; July 16, 1959; October 14, 1959; and December 21, 1959. This action was filed December 12, 1959.

Mr. Line wrote plaintiff on February 24, 1959, as follows: "I received a letter from the company today and they would like to have estimates on the damage. I have estimates from Ladehoff's at North Bend and I will send that in today but I believe it would be helpful to get another independent estimate. The company is reserving its decision as to whether you are liable to Voss under the facts of the case but they would like to have me interview Voss to see if a possible settlement can be arranged. I can contact Voss, myself, or if you

would prefer, you can ask him to get in touch with me for an appointment."

The defendant lists 17 assignments of error. Excluding those assignments referring to the vacation of the summary judgment referred to heretofore, we find that the defendant's main contentions may be grouped as follows: First, the loss is specifically excluded from the policy because it was brought about by the failure to collect or to remit a premium; second, that the Farmers Mutual Insurance Company was liable for the loss and not the plaintiff; and third, that the plaintiff breached the policy conditions by an unauthorized settlement without notice to the defendant and without the defendant's consent. We will discuss these contentions in the order listed above.

Was the loss specifically excluded by the policy? The exception in the policy is as follows: "This Insurance shall not indemnify the Insured in respect of any claim * * * (d) brought about or contributed to by any commingling of or inability or failure to pay or collect premium, claim or tax moneys." The evidence is undisputed that in the plaintiff's dealings with the Farmers Mutual Insurance Company it was customary for him to send in the renewal application without money; that the policy would be renewed; and that he would be billed by the company for the premiums at the end of the month. When he received the renewal he would then bill the customer. We do not believe the exclusion applies in this case. It was not the failure to collect a premium but rather it was the failure to send in the renewal application which resulted in the failure to renew. If the defendant's policy has any meaning, this would be an error or omission within the terms of the policy.

The second contention may be disposed of very summarily. The evidence adequately establishes that by the terms of the fire insurance policy issued by the Farmers Mutual Insurance Company there could be

no liability on its part until the renewal application had actually been received and accepted by the company at its home office. It is admitted that the renewal application was never sent to the insurance company but was mislaid in the office of the plaintiff.

The third contention is the major one and, the record would indicate, the one which gave the trial court the most concern. The policy contains the following conditions: "The Insured shall not admit liability for or settle any claim or incur any costs or expenses in connection therewith without the written consent of the Company, who shall be entitled at any time to take over and conduct in the name of the Insured the defense of any claim.

"Nevertheless, the Insured shall not be required to contest any legal proceedings unless a lawyer (to be mutually agreed upon by the Insured and the Company) shall advise that such proceedings should be contested."

The plaintiff contends, and the trial court found, that the defendant by its conduct waived its right to insist upon the plaintiff's compliance with this provision. What is the purpose of the provision? Is it not to keep the insured from admitting liability until the company has an opportunity to fully investigate the claim and to determine its position? How long must the insured wait for the company to do so? Must he wait until after suit is filed or judgment secured or execution levied before he can settle, if ever, without the written consent of the defendant? There are annotations in 49 A. L. R. 2d 694 and 67 A. L. R. 2d 1086 covering the situation where an insurance company denies liability. All jurisdictions would appear to hold that the denial of liability relieves the insured from his contract obligation not to settle, and that he may do so even before suit.

In Barrett v. Northwestern Mutual Life Ins. Co., 124 Neb. 864, 248 N. W. 391, which involved the failure to file proof of loss after a denial of liability, we said at page 871: "Waiver by denial of liability is based largely

upon the principle that the law does not require a vain, useless, or unnecessary thing. The general rule is that a denial by the insurer, or its authorized agent, of liability under its policy, or any act or artifice to mislead the insured, and cause him to omit to perform a duty he would otherwise have performed, will operate as a waiver of a provision requiring proof. In fact, to effect a waiver by a denial of liability on the part of the insurance company, the denial must be of such a character, or made under such circumstances, as reasonably to induce the belief that the submission of proofs will be useless. Nor need the denial be express or unequivocal, it being sufficient that the facts and circumstances warrant the inference that liability was, and would be, denied. The insured may not be deprived of his rights by a narrow and technical construction of formal requisites, by which that right is to be made available. On the contrary, a liberal and reasonable construction should be given."

In Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623, we held that an insurer's denial of liability waived its right to defend and left the insured free to defend or in good faith to make such settlement as ordinary and reasonable prudence and caution might dictate.

In the instant case, there was no outright denial of liability until July 21, 1959, when Mr. Line wrote the plaintiff as follows: "The Interstate Fire & Casualty Company has asked me to advise you that they do not feel this loss is covered under your policy. Their position is that, by virtue of your agency agreement with the Farmers Mutual, you had authority to bind the Farmers Mutual and did bind them when you received Voss's application. They feel that the Farmers Mutual was in error in denying Voss coverage and the Farmers Mutual should properly bear this loss." The plaintiff had settled with Voss on May 21, 1959.

The plaintiff's position is that the defendant's unrea-

sonable delay to take action after notice of the claim released him from this provision of the policy even though the defendant had not specifically refused to act or defend him. Briefly reviewing the evidence, the defendant was advised of the claim November 21, 1958. It never acknowledged the letters from the insurance broker or ever communicated with the broker or directly with the plaintiff. It did contact Mr. Line who wrote the plaintiff about December 11. According to defendant's testimony, the plaintiff visited Line's office about the claim on December 12, 1958, and on January 10, February 16, February 24, March 13, March 27, April 27, May 15, June 18, July 17, and July 18, 1959. On February 24, 1959, Line wrote the letter set out heretofore stating that the company was reserving its decision on liability and asking for an interview with Voss. The plaintiff secured an additional estimate for Line and brought Voss to Line's office. Subsequent to that letter, and before settlement, the plaintiff visited Line's office four times. The plaintiff testified that on May 20, 1959, he informed Line that the Vosses wanted a settlement or they would have to do something about it, and that Line said, "let them sue." He then testified that he told Line he didn't want to do that, that he was going out and make a settlement with them, and that Line asked him to obtain a release and gave him a release form.

It should be noted that although Line wrote the defendant four times before settlement was made, he received only one reply, the one of February 23, which it can be assumed occasioned the letter of February 24 to the plaintiff. The next letter he received from the defendant was dated July 16, 1959, and it can be assumed this occasioned his letter of July 21.

The plaintiff was an insurance agent in a small community. He had failed to process a renewal for a customer and as a result that customer sustained a substantial loss to farm machinery. That loss occurred in

October 1958. The customer had every right to expect settlement within, at most, a few weeks. Plaintiff settled the claim in May 1959, 7 months after the claim arose. At the time he made the settlement it was evident that the defendant was not disposed to pay the claim. Defendant's attorney, Line, had said in effect, "let them sue." It is not too unreasonable to assume that under the facts in this case, if the plaintiff had refused to settle and had stood suit, he was risking serious potential harm to his future insurance business. His action was entirely reasonable under the circumstances. Our problem is, was the defendant's delay unreasonable under the circumstances, and if so, was it sufficient to amount to a waiver of the requirement of written consent.

In 45 C. J. S., Insurance, § 937, p. 1072, we find the rule stated as follows: "The provision against settlement by insured cannot be taken advantage of by insurer, where it unreasonably delays to take any action, after notice of the claim, * * *." The leading authority for the rule seems to be a 1915 Kentucky case, Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S. W. 217, L. R. A. 1915F 958, which held a delay of 3 months was unreasonable. This case is quoted with approval in Thomas Kilpatrick & Co. v. London Guarantee & Accident Co., 121 Neb. 354, 237 N. W. 162, which case follows the general rule that denial of liability waives the compliance with a policy provision for the forwarding of process served on the insured. In that case at page 361 we find the following: "In Interstate Casualty Co. v. Wallins Creek Coal Co., 176 S. W. 217 (164 Ky. 778), it is said: 'A policy of employer's liability insurance provided that the insurer should not be responsible for settlements made by insured not specially authorized in writing by the insurer, and agreed to investigate all claims and defend all suits. The employer, having become liable to an employee for personal injuries, duly notified the in-

surance company, who investigated the case, but took no further steps in the matter, nor did it repudiate liability. After a delay of three months the employer settled the claim for a reasonable amount, and brought suit for reimbursement against the insurance company. Held, that the insurer was estopped to rely on the stipulation forbidding settlement.' "

We have no hesitancy in finding that the evidence amply discloses an unreasonable delay on the part of the defendant in processing the plaintiff's claim. We further find that such delay amounted to a denial of coverage and constituted a waiver of any right to insist on the policy provision regarding defense or settlement.

The defendant in its reply brief said: "In all of the cases cited by appellee, and appellant does not disagree with their holdings, only their materiality and similarity to the instant case, there appears to be a requirement that the insured's liability be established or the insured's liability to the claimant is unquestioned."

The defendant is questioning the legal liability of the plaintiff to Voss. Certainly if he is doing so on the grounds set out in his letter of July 21, 1959, we have summarily disposed of that point. In any event, we believe the proper rule to be the one suggested in what might be considered a comparable situation in Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623. If an insurer waives its right to defend, this leaves the insured free to defend the action to judgment or, in good faith, to make such settlement as ordinary and reasonable prudence and caution might indicate to be advisable. There can be no question in this record but that the plaintiff settled in good faith.

The trial court rendered judgment in favor of the plaintiff and against the defendant for the sum of $1,155.31 together with interest from May 21, 1959, attorneys' fee in the amount of $750, and court costs. The plaintiff settled the claim for $1,433.37. Under the

terms of the policy the plaintiff had agreed to pay the first $250.

Defendant questions the allowance of an attorneys' fee to the plaintiff. Section 44-359, R. R. S. 1943, provides as follows: "In all cases where the beneficiary, or other person entitled thereto, brings an action at law upon any policy of life, accident, liability, sickness, guaranty, fidelity, *or other insurance of a similar nature,* or upon any certificate issued by a fraternal beneficiary association, against any company, person or association doing business in this state, the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs. If such cause is appealed, the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings." (Italics supplied.) It is true that the errors and omissions policy is not one of those specifically enumerated in the statute. It is in effect, however, a liability policy. If the phrase "or other insurance of a similar nature" has any meaning we must hold that an errors and omissions policy is included within that phrase. The trial court properly allowed an attorneys' fee of $750.

Defendant also questions the allowance of interest from May 21, 1959, which was the date of the settlement. We find no merit to the defendant's contention.

For the reasons herein stated, the judgment of the trial court is in all respects affirmed, and plaintiff's attorneys are allowed an additional fee of $300 for services in this court.

AFFIRMED.