RENDERED: SEPTEMBER 17, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0015-MR

GREENWICH INSURANCE COMPANY　　　　　　　　　　APPELLANT

　　　　　　　　　APPEAL FROM MAGOFFIN CIRCUIT COURT
v.　　　　　HONORABLE JAMES W. CRAFT, II, SPECIAL JUDGE
　　　　　　　　　ACTION NO. 07-CI-00006

ESTATE OF LAHOMA SALYER BRAMBLE;
JOAN ANGONESE; MICHAEL R. ANSLEM;
MELYNDA HARTMAN COFFEE; AMELIA
CRAFT; CHARLES V. CRAFT; JUDY DOWNS
CROCKETT; BETTY DOBSON; DOUG DOWNS;
CAROLYN DYKHUZIEN; GWENDONLYN R.
FORGE; MAXINE FRENCH; FREDERIC HARWELL,
ADMINISTRATOR OF THE ESTATE OF RONALD
HARWELL; GEMALEA SALYER HAVENS;
PAM HOWARD; MAYOLA HUMES; GAIL KAHLEY;
NEVA LOUISE LOVELY; SANDY DOWNS ZIMMERMAN
LYNCH; KAREN J. LYON; CHRISTINE MADISON
KELLEY, ADMINISTRATOR OF THE ESTATE OF
LILLY MAY MADISON; ONEDA MARCHETTI;
DAVID MARTIN; KIMBERLY D. MCCORD;
LILLIAN MINIX; JAMES R. (JAMIE) PHARES;
JASON PHARES; CHERYL L. PIPER; MOLLIE W.
RICHARDSON; BILL SALYER; DAVID RON SALYER;
GARY SALYER; GLEN SALYER; JAMES SALYER;
LARRY KEITH SALYER; LARRY R. SALYER; MARK

STEVEN SALYER; MARY E. SALYER; PATCHEL
SALYER; RAMEY SALYER, JR.; ROBERT E. SALYER;
ROY WARD SALYER; TIMMY ODELL SALYER;
WISEMOND SALYER; LAVINIA WHITAKER SMITH;
BARBARA STALBAUM; GINGER ASHWORTH,
EXECUTRIX OF THE ESTATE OF ANNA M. STEPHENS;
VANESSA EASON VANHYNING; LAVARVIA
BEDDINGFIELD WEBIE; DANIEL E. WHITAKER;
DARYL LAWRENCE WHITAKER; JACK WHITAKER;
JAMIE WHITWORTH; DARRELL G. WILLIAMS;
GARY WILLIAMS; GREG WILLIAMS; RANDALL
WILLIAMS; KAREN WORTMAN; BERNICE BAILEY,
DECEASED; HENRIETTA BERRY, DECEASED;
RUTH BROCK, DECEASED; BEAUREDA
COLLEY, DECEASED; CONROY CRAFT, DECEASED;
MARY FIFIELD, DECEASED; PAULINE FRITTS,
DECEASED; JERRY B. GIBBS, DECEASED; PAUL B.
GIBBS, DECEASED; MYRTLE HOWARD, DECEASED;
LINDA KRONTZ, DECEASED; HAROLD LOVELY,
DECEASED; MARK MANNING, DECEASED; AUDREY
MINIX, DECEASED; EARNESTINE MINIX, DECEASED;
JAMES PHARES, DECEASED; INA SALYER PYLES,
DECEASED; WANDA GAYE ROKOSZ, DECEASED;
CHANDLER "HAPPY" SALYER, DECEASED; EMORY
CAIN SALYER, DECEASED; FORD SALYER, DECEASED;
KELLY SALYER, DECEASED; ROTHEL SALYER,
DECEASED; VENA SALYER, DECEASED; LILLIAN
WHITAKER FLOYD, DECEASED; MARVIN WHITAKER,
DECEASED; DEN DELBERT WILLIAMS, DECEASED;
GERALDINE WILLIAMS, DECEASED; AND ESTATE
OF EVALEE BLAYLOCK EDWARDS                      APPELLEES

AND

NO. 2019-CA-0207-MR


GREENWICH INSURANCE COMPANY                      APPELLANT


-2-

v.                    HONORABLE JAMES W. CRAFT, II, JUDGE
                      ACTION NO. 07-CI-00006


MELYNDA HARTMAN COFFEE; AMELIA
CRAFT; JUDY DOWNS CROCKETT; BETTY
DOBSON; DOUG DOWNS; CAROLYN
DYKHUZIEN; GWENDONLYN R. FORGE;
MAXINE FRENCH; FREDERIC HARWELL,
ADMINISTRATOR OF THE ESTATE OF RONALD
HARWELL; GEMALEA SALYER HAVENS;
PAM HOWARD; MAYOLA HUMES; GAIL KAHLEY;
SANDY DOWNS ZIMMERMAN LYNCH;
KAREN J. LYON; CHRISTINE MADISON KELLEY,
ADMINISTRATOR OF THE ESTATE OF LILLY
MAY MADISON; ONEDA MARCHETTI; DAVID MARTIN;
LILLIAN MINIX; JAMES R. (JAMIE) PHARES;
JASON PHARES; CHERYL L. PIPER; MOLLIE W.
RICHARDSON; BILL SALYER; DAVID RON
SALYER; GARY SALYER; GLEN SALYER;
JAMES SALYER; LARRY KEITH SALYER;
LARRY R. SALYER; MARK STEVEN SALYER;
MARY E. SALYER; PATCHEL SALYER;
RAMEY SALYER, JR.; ROBERT E. SALYER;
ROY WARD SALYER; TIMMY ODELL
SALYER; WISEMOND SALYER; LAVINIA
WHITAKER SMITH; BARBARA STALBAUM;
GINGER ASHWORTH, EXECUTRIX OF THE
ESTATE OF ANNA M. STEPHENS; VANESSA EASON
VANHYNING; LAVARVIA BEDDINGFIELD
WEBIE; DANIEL E. WHITAKER; DARYL
LAWRENCE WHITAKER; JACK WHITAKER;
JAMIE WHITWORTH; DARRELL G. WILLIAMS;
GARY WILLIAMS; GREG WILLIAMS; RANDALL
WILLIAMS; AND KAREN WORTMAN                    APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE:  These appeals arise from a third-party bad faith action relating to the denial of coverage by Greenwich Insurance Company of claims by mineral property owners for trespass to minerals on their respective properties. After a jury found that Greenwich had violated six parts of Kentucky's Unfair Claims Settlement Practices Act (UCSPA), Kentucky Revised Statutes (KRS) 304.12-230, and acted with gross negligence towards the owners, the Magoffin Circuit Court awarded the landowners $15.1 million in damages.  This included $14.3 million in punitive damages and $834,000.00 in compensatory damages, and the court ordered Greenwich to pay an additional $1.52 million based upon its default of obligations under an earlier settlement agreement.  We reverse and remand.

The underlying matter began with the filing of a complaint with the Magoffin Circuit Court on January 9, 2007.  The plaintiffs[1] are individuals who owned mineral property in the county.  They are the heirs of Ben and Lillian Salyer, who had owned, in whole or in part, tracts of mineral property on Stinson

---

[1] Many of the named plaintiffs were dismissed in 2018, either due to non-participation in the suit or because they had passed away and their claims had not been revived.

Creek at Patton Fork and the Wardie Patrick Farm. They died intestate in 1946 and 1940, respectively, and the plaintiffs are their grandchildren or great-grandchildren, as their eleven children who had inherited the properties had passed away. The plaintiffs named J.D. Carty Resources, LLC, and Anaconda Drilling of Kentucky, LLC, as the defendants. Anaconda Drilling is a third-party contractor that was hired by J.D. Carty Resources to drill the wells at issue. The plaintiffs alleged that, beginning in 1993, the defendants trespassed on their land without permission or color of title and used heavy equipment to build roads and to drill and produce natural gas wells. This caused damage to the plaintiffs' land and deprived them of the mineral and royalties. This, they alleged, constituted willful trespass to their mineral and entitled them to damages for the full value of the natural gas produced from the wells. The plaintiffs sought a declaration of rights concerning their interest in the mineral property and the title and boundary line locations. They also sought injunctive relief to enjoin the defendants from continuing to drill and produce natural gas from their land.

A first amended complaint was filed in July 2007, in which the plaintiffs named various companies, estates, or individuals who also might claim an interest in the mineral property. A second amended complaint was filed in November 2007, naming Equitable Production Company as a successor in interest to one of the parties added in the first amended complaint. Litigation proceeded as

to the boundaries of the properties at issue. The circuit court entered a partial summary judgment in March 2008, ruling that the plaintiffs were entitled to a judgment as to liability for trespass to minerals against J.D. Carty Resources, Anaconda Drilling, and Country Gas, LLC (the J.D. Carty companies). The court specifically stated:

> The J.D. Carty Companies' expert and Licensed Land Surveyor conducted a survey of the Salyers heirs' mineral property that is the subject of this action, and prepared a survey plat which is filed in the record in this case (the "BoCook Survey"). The BoCook survey agrees with the Plaintiffs' survey that the Claxton McCarty Well #2 was drilled on the Plaintiffs' mineral tract and is essentially the same with regard to the area affected by the Claxton McCarty Well #2. In answers to Requests for Admissions, the J.D. Carty Companies admitted to the accuracy of the BoCook Survey. There being no genuine issue of material fact, Plaintiffs are entitled to judgment as a matter of law on the issue of liability against the J.D. Carty Companies.

A jury trial was to be assigned to decide the remaining matters, including the amount of damages the plaintiffs could recover and apportionment of fault. A third amended complaint was filed in July 2008, adding two additional defendants (John D. Carty and Fast Flow Group, LLC, which were included with the J.D. Carty companies) and a cause of action for fraud.

In September 2008, the plaintiffs filed a motion for an evidentiary hearing and to enforce a settlement agreement between them and the J.D. Carty companies. In December 2008, the court entered an order and judgment setting

forth the terms of the agreement reached between the parties (the Bramble judgment). The court ordered J.D. Carty Resources and Country Gas to pay the plaintiffs $628,000.00 to settle all claims related to the Claxton McCarty Well #2, making those defendants jointly and severally liable to pay the judgment. The Plaintiffs agreed to postpone execution of the judgment against the J.D. Carty companies as long as those defendants complied with the order and paid each payment when due as set forth in the order. An initial payment of $90,000.00 was due on or before December 18, 2008, and the balance was to be paid in ten equal installments of $50,000.00 each and a final payment of $38,000.00, with the first $50,000.00 payment to be made on or before January 18, 2009, and on the 18th of each month after that. Once all the payments had been made, the judgment would be deemed satisfied, and the claims against the J.D. Carty companies would be dismissed. If the defendants defaulted on one or more of the payments, they would not be entitled to a credit or setoff of the amounts paid under the agreement against any final judgment that was to be entered.

In January 2009, the plaintiffs moved to enforce the settlement agreement or to assign a trial date, stating that the J.D. Carty companies had defaulted on the agreement to pay. The same month, they filed a renewed motion for summary judgment, seeking the amount of $1,010,746.67 from the J.D. Carty companies along with interest based upon the default. Anaconda Drilling objected

to the motion, stating that it had fully complied with its obligation by tendering $20,000.00 by check from its carrier to Carty's personal counsel with a policy release document. The release document was to be executed in exchange for the check. In February, the plaintiffs moved to withdraw their motion to enforce the settlement agreement so that the matter could proceed to trial the following month, although that trial was later continued. On February 19, 2009, the circuit court entered an agreed order memorializing a settlement agreement between the parties related to held garnishment funds.

As the matter proceeded, the circuit court permitted several parties to intervene in order to determine their respective rights, and it substituted others due to death. By order entered June 1, 2009, the court dissolved and set aside the temporary restraining order and injunction enjoining the plaintiffs from executing on the judgment. In the same order, the court denied a motion to intervene by four individuals, which was appealed. That order was affirmed in an opinion rendered in October 2010. Another defendant, Country Gas, appealed from an order entered in April 2010 related to the court's order for a judgment of sale against its assets. Country Gas's appeal was dismissed on November 9, 2010.

In April 2010, the plaintiffs moved for leave to file a fourth amended complaint. In this amended complaint, the plaintiffs sought to join Bituminous

Casualty Corporation[2] (the insurer for Anaconda Drilling) and Greenwich

Insurance Company (the insurer for J.D. Carty Resources) in order to assert claims

for violations of Kentucky's UCSPA or common law bad faith.  Both Greenwich

and Bituminous had been notified of the plaintiffs' claims no later than January

2007, when the litigation began.  Neither insurance company made an offer of

settlement until January 2009, when the companies offered to pay $20,000.00 to

settle the claims against their respective insured entity.  The plaintiffs alleged that

the companies lacked a reasonable basis to refuse or delay payment of the

insurance claims once they were notified and had received information to

document the claims.  They also alleged the companies acted and continued to act

with reckless disregard as to whether there was a reasonable basis to deny paying

the claims or to negotiate a good faith settlement.  As a result, the plaintiffs

suffered inconvenience from these delays and the failure of the insurance

companies to pay under the policies or attempt to settle and pay their claims in

good faith.  The plaintiffs went on to allege that the companies had ulterior motives

for refusing to pay in good faith based upon the existence of self-serving programs

and/or rewards programs, which would reward adjusters for underpaying claims.

They alleged that this conduct constituted gross negligence and a reckless

---

[2] Bituminous changed its name to BITCO General Insurance Corporation during the course of the proceedings.  In the interest of clarity, we shall refer to this defendant as Bituminous throughout this opinion.

disregard to whether any reasonable basis existed for denying or delaying payment of their claims. Therefore, the plaintiffs sought punitive damages. The plaintiffs also sought to recover attorney's fees, costs, and pre-claim and pre-judgment interest. The motion was granted, and the fourth amended complaint was filed.

In May 2010, Bituminous filed a notice of removal with the United States District Court for the Eastern District of Kentucky, Southern Division at Pikeville, based upon diversity jurisdiction. However, the matter was remanded to state court shortly thereafter because it could not be determined at that time whether complete diversity existed.

In June of that year, the plaintiffs moved to clarify the scheduled trial date and to bifurcate certain defendants. They also indicated that they were not waiving their right to a jury trial on their bad faith claims against Bituminous and Greenwich. In August, Greenwich also filed a motion to sever the claims made in the fourth amended complaint against it from the remaining issues in the case. It indicated that it had been defending the underlying case under a reservation of rights and that, before a bad faith claim may proceed, coverage and an obligation to pay must be established. Bituminous also filed a motion to sever. Both parties filed motions seeking a protective order and to stay discovery. In its motion, Greenwich stated that it had contributed $20,000.00 to the total amount of the agreed upon settlement between the plaintiffs and its insured, J.D. Carty

Resources. For that contribution, J.D. Carty Resources signed a policy holder's release in which it agreed that it was not entitled to any further coverage or defense under its policy with Greenwich. J.D. Carty Resources and the plaintiffs accepted the funds and acknowledged the release. The remainder of the settlement was to be paid by J.D. Carty Resources pursuant to a set schedule. When J.D. Carty Resources defaulted on its payments, the plaintiffs demanded payment from Greenwich. They filed a fourth amended complaint against Greenwich and Bituminous when reminded about the substance of the settlement agreement and release. The court denied the motions to sever and for a protective order.

In November 2010, the Salyer heirs plaintiffs[3] filed a motion for partial summary judgment against Greenwich and Bituminous, asking the court to declare that the insurance companies were obligated to pay their claims under the terms of the respective insurance policies. They argued that a review of the companies' policies established that they provided coverage for the claims. Greenwich responded with a cross-motion for partial summary judgment on the issue of coverage, arguing that no coverage existed under the policy for various reasons.

---

[3] The attorneys representing the Salyer heirs withdrew their representation of other plaintiffs prior to the filing of this motion. We shall continue to refer to these parties as the plaintiffs.

-11-

On January 11, 2011, the circuit court entered an order ruling on the pending motions. The court denied the motions filed by Greenwich and Bituminous, but it granted the plaintiffs' motion for partial summary judgment. It found that the policies provided coverage for J.D. Carty Resources' actions that formed the basis of the plaintiffs' complaint and subsequent judgment. It therefore found that the plaintiffs had established the first prong of the bad faith test as set forth in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993); namely, that the insurers were obligated to pay the claim under the terms of the respective policies. Both insurance companies moved the court to alter, amend, or vacate this order. Greenwich specifically argued that the court failed to specify which plaintiffs were entitled to summary judgment; that the order did not indicate a basis for the ruling through findings of fact or conclusions of law; that the bad faith standard was misstated as the standard cited in the order was for first-party, not third-party, bad faith claims; and that the parties had not been heard on the issues presented regarding its liability for violations of the UCSPA. Greenwich requested that the order be made final and appealable. In a separate filing, Greenwich renoticed its motion to bifurcate. And in February 2011, Greenwich moved the court to reconsider the denial of its motion for summary judgment.

By order entered March 11, 2011, the court ruled on the various pending motions. The court granted the motions to bifurcate and stay discovery,

partially granted reconsideration on its summary judgment by indicating which plaintiffs were included in the order (the plaintiffs represented by attorneys Dean and Mehr), and denied reconsideration as to its judgment in favor of the plaintiffs on coverage. As to Greenwich, the circuit court stated:

> [T]he insurance policy between Greenwich and its insured J.D. Carty Resources, LLC, provides coverage for the claims asserted by the Dean/Mehr Represented Salyer Heir Plaintiffs against J.D. Carty Resources. J.D. Carty Resources' trespass to minerals constitutes property damage and an occurrence under the terms of the Greenwich/J.D. Carty Resources insurance contract. No exclusions in the policy apply, and additionally the Greenwich/J.D. Carty Resources insurance contract contains a "personal injury and advertising liability endorsement" that also provides coverage for the Dean/Mehr Represented Salyer Heir Plaintiffs' claims against J.D. Carty Resources.

In addition, the circuit court made the January 11, 2011, order final and appealable. Both Greenwich and Bituminous appealed from these rulings (Appeal Nos. 2011-CA-0542-MR and 2011-CA-0643-MR). This Court dismissed the appeals on February 21, 2014, as non-final and interlocutory, holding that it was beyond the circuit court's discretion to make the rulings final. The Supreme Court of Kentucky denied the motions by Greenwich and Bituminous seeking discretionary review on February 23, 2015, and this Court's opinion and order became final later that month. At that time, litigation as to the UCSPA and bad faith claims went forward.

-13-

In August 2016, Greenwich and Bituminous filed a joint notice of removal to the United States District Court for the Eastern District of Kentucky based upon diversity jurisdiction pursuant to 28 United States Code (U.S.C.) § 1441. In response to the removal, the plaintiffs moved to remand the case to state court. Early in 2017, the federal court opted to remand the case based upon the failure of the insurance companies to properly remove the case within one year of its commencement.

Upon remand, the plaintiffs moved the circuit court to enter a scheduling order and set the matter for a jury trial on their bad faith claims against Greenwich and Bituminous. By order entered in April 2017, the matter was set for a status conference two months later.

Prior to the status conference, the plaintiffs filed a notice of their intention to file a motion to enter an agreed judgment and order of dismissal of their claims against Anaconda, J.D. Carty, and Fast Flow Group. They also moved to file a fifth amended complaint to assert supplemental claims against Greenwich and Bituminous, alleging that the insurers had fraudulently induced J.D. Carty Resources and Anaconda into signing a policyholder's release in exchange for the $20,000.00 and defense under the policies.

Following the status conference, the court set a jury trial for March 5, 2018. The trial would first determine the issues of damages and apportionment. If

those matters were settled or resolved, the trial would determine the bad faith claims. Discovery went forward.

In November 2017, the plaintiffs filed a motion for partial summary judgment against Greenwich for the amount of the underlying judgment against J.D. Carty Resources ($628,000.00), plus interest, for a total of $1,358,858.01. This was based upon discovery documents that showed that lawyers had advised the insurance company as early as June 26, 2007, that the policy of insurance did provide coverage for the trespass claims as well as upon the circuit court's January 2011 ruling that the policy provided coverage. The court denied this motion in an order entered February 8, 2018.

Also in November 2017, Greenwich moved to dismiss the plaintiffs' fourth amended complaint, arguing that Kentucky law prohibits a third party from pursuing a claim under the UCSPA for the purpose of determining coverage. Because coverage had always been contested and had not been established, and the plaintiffs did not seek a declaratory judgment in that complaint, the plaintiffs did not have the right to pursue such a claim in the fourth amended complaint. In addition, Greenwich argued that a third-party bad faith claim is not permitted under Kentucky common law. Therefore, Greenwich asserted that the plaintiffs did not have standing to bring a common law bad faith claim against it. Greenwich also argued that the plaintiffs could not prove that its conduct was outrageous or

demonstrated a reckless indifference to the rights of others. In response, the plaintiffs moved to amend the pleadings to conform to the evidence that it was making a claim for declaratory relief pursuant to KRS 418.404.

The plaintiffs moved to file a second, fifth amended complaint in January 2018 to make it clear that they were seeking a declaration of rights as to whether the insurance companies' policies covered their claims pursuant to KRS 418.040. The court permitted the plaintiffs to do so by order entered April 16, 2018. This order also scheduled a jury trial to begin on September 17, 2018. The court denied Greenwich's motion to dismiss the same day.

In March 2018, Greenwich filed a response to the plaintiffs' motion for partial summary judgment as well as a cross-motion for summary judgment. Greenwich continued to argue that there was no coverage for lost royalties and revenue under the policy, only tangible property damage, and that it was entitled to summary judgment as well as a dismissal of the claims against it. And in April 2018, Greenwich filed a motion to dismiss the fifth amended complaint for failure to state a cause of action for which relief could be granted based on it being unduly vague.

On May 22, 2018, the court entered an agreed order of partial dismissal. Pursuant to a joint motion, the plaintiffs' claims against Anaconda and Bituminous were dismissed with prejudice as settled.

On May 30, 2018, Greenwich filed an answer to the fifth amended complaint as well as a counterclaim against the plaintiffs and a cross-claim for declaratory judgment against J.D. Carty Resources. These were related to the bad faith claims against it.

In July 2018, Greenwich moved to dismiss the fourth and fifth amended complaints because it had satisfied its part of the underlying agreement by paying $20,000.00 of the amount due and because of the policy holder's release. It argued that the plaintiffs waived their right to object to the policy holder's release by failing to object to that portion of the agreement being read into the record. It also argued that cashing the check constituted waiver and estoppel.

In August 2018, Greenwich filed a motion for summary judgment on the second element of Kentucky's bad faith test. It argued that the plaintiffs failed to prove that it lacked a reasonable basis in law or fact to deny the claim and that whether the belief that coverage did not exist was fairly debatable. The gist of Greenwich's argument was that the plaintiffs' claims for trespass to minerals (here, the capture, removal, and sale of natural gas) did not constitute a covered occurrence under an endorsement to the policy or was at least fairly debatable. To be an occurrence, the claimed loss must be an accident, which Greenwich asserted was not the case here as J.D. Carty Resources' actions were not accidental.

Therefore, the plaintiffs could not prove all of the elements, and their bad faith claim should be dismissed. The plaintiffs objected to the motion.

Also in August, Greenwich moved the court to alter, amend, or vacate its interlocutory order entered March 11, 2011, based upon a new decision by the Supreme Court of Kentucky in *American Mining Insurance Co. v. Peters Farms, LLC*, 557 S.W.3d 293 (Ky. 2018). The plaintiffs disputed that the policy at issue in *American Mining* was the same as the one in the present case.

And also that month, the plaintiffs filed a motion for summary judgment seeking a declaration of rights under the fifth amended complaint that Greenwich's insurance policy provided coverage for their trespass claim. They argued that the plain language of the endorsement explicitly covered trespass and that Greenwich's attorneys offered it the same advice.

Prior to trial, both sides filed motions *in limine*. Greenwich specifically objected to the introduction of any testimony from the plaintiffs' proposed expert, David Huff, regarding whether its managing general agent (MGA) agreement with DBG & Associates, including the compensation structure, was improper or violated the UCSPA. It also sought to exclude testimony about or reliance upon the 2011 interlocutory orders regarding coverage. In a separate motion, Greenwich sought to strike Mr. Huff's opinion in whole or in part because he had never been a licensed insurance adjuster and therefore was not qualified to

offer an opinion as to whether a carrier acted in bad faith.  The plaintiffs argued that Mr. Huff was qualified to offer expert testimony in this case.

In September 2018, Greenwich filed a response to the plaintiffs' motion for summary judgment and filed a cross motion for summary judgment seeking a declaration that its policy did not provide coverage for mineral trespass and conversion.  It again cited the newly released opinion of the Supreme Court for its argument that the March 2011 interlocutory order should be amended or vacated.

The circuit court held a pretrial conference on September 7, 2018, and thereafter entered an order ruling on various motions that had been pending.  The court bifurcated the claims against John Carty, individually, from those against Greenwich in the fourth amended complaint.  It granted Greenwich's motion to alter, amend, or vacate the March 11, 2011, order in part, having determined that the holding in *American Mining* was dispositive as to the question of whether Coverage B (Property Damage based upon an occurrence) provided J.D. Carty Resources with coverage for the allegation of mineral trespass.  Based on that holding, the court vacated its ruling that the policy provided coverage for the mineral trespass claims.  It noted that the plaintiffs had stipulated on the record that they agreed with the court's interpretation of *American Mining* and were withdrawing any claim that J.D. Carty Resources' mineral trespass constituted

property damage and an occurrence under the terms of the insurance contract with Greenwich. The court did not, however, grant the portion of Greenwich's motion related to Group C of the personal injury and advertising injury endorsement.

The court went on to grant the plaintiffs' motion for summary judgment and denied Greenwich's cross motion for summary judgment related to coverage for the mineral trespass claims, holding that the policy did provide such coverage. It denied Greenwich's motion for summary judgment on the fourth and fifth amended complaints based upon waiver or equitable estoppel. It also denied Greenwich's motion for partial summary judgment regarding the policy language in the personal injury and advertising injury endorsement in Group C, ruling that it did not find any ambiguity in the policy language or that the interpretation of the policy language was fairly debatable. It found that questions of fact remained as to whether Greenwich had acted reasonably in handling the plaintiffs' claim. The court opted to pass the motion related to Mr. Huff's testimony, noting that it would address specific objections during his testimony.

A jury trial commenced on September 17, 2018, and concluded eleven days later. Greenwich filed a written motion seeking a directed verdict of dismissal due to lack of evidence of outrageous conduct. It argued that there was no evidence of reckless indifference to the plaintiffs' collective rights in the way Greenwich had defended itself and that, once put on notice, it took reasonable

-20-

measures to investigate and promptly respond to the claims. Greenwich also filed a written motion for a directed verdict due to lack of sufficient evidence of emotional distress. The court entered a directed verdict in favor of Greenwich as to several individuals or estates.

Following the trial, Greenwich filed motions for a judgment notwithstanding the verdict (JNOV) pursuant to Kentucky Rules of Civil Procedure (CR) 50.02, citing lack of sufficient proof of mental anguish in the context of bad faith, of outrageous conduct, of violations of the UCSPA, and for the punitive damages award. The plaintiffs argued that the jury's verdict was consistent with the evidence that had been presented at the trial.

On November 9, 2018, the court entered its trial judgment. It noted that it had verbally granted Greenwich's motion for a directed verdict due to lack of proof of emotional distress damages or lack of proof to support the dismissed plaintiffs' claims. It also had granted a directed verdict related to another plaintiff who had passed away and whose claim had not been revived. As a result of these rulings, 52 plaintiffs remained. The court went on to state that it had denied the remaining motions by Greenwich for a directed verdict at the close of the plaintiffs' case-in-chief and at the close of its case-in-chief. As to the jury's verdict, it found in favor of the plaintiffs on all of the interrogatories under Instruction No. 2 and awarded each plaintiff compensatory damages for emotional

distress in amounts between $11,000.00 and $40,000.00 for a total of $834,000.00 under Instruction No. 4. Under Instruction No. 5, the jury found that Greenwich had acted with gross negligence towards the plaintiffs and awarded $14.3 million in punitive damages. The court awarded the plaintiffs the individual sums set forth in Instruction No. 4 and jointly awarded them the punitive damages along with post-judgment interest.

Greenwich filed another motion for a JNOV following entry of the judgment on each of the grounds listed above. In the alternative, it moved the court to alter or vacate the punitive damages award.

On November 30, 2018, the court entered an order and judgment granting the plaintiffs' motion for partial summary judgment against Greenwich related to the payment of damages and interest from the order and judgment entered in December 2008 in the underlying case. The court determined that Greenwich was obligated to pay the amount due from J.D. Carty Resources. The amount of damages was $628,000.00, and, with accrued interest, the amount owed was $1,520,433.27. The court adjudged Greenwich to be jointly and severally liable to the plaintiffs under the terms of the December 17, 2008, order and judgment. This order was made final and appealable. Greenwich filed a notice of appeal from the September 17 and November 30, 2018, orders as well as from several orders entered in 2011 (Appeal No. 2019-CA-0015-MR).

On January 22, 2019, the court entered an order denying Greenwich's motion for a JNOV or new trial, specifically addressing the punitive damages argument. It held that Greenwich failed to challenge the amount of punitive damages and that the amount awarded was not excessive. Greenwich filed a notice of appeal from the November 9, 2018, judgment, the January 22, 2019, order denying its motion for a JNOV, and several other orders entered during the course of the proceedings (Appeal No. 2019-CA-0207-MR).

On appeal, Greenwich raises issues related to the circuit court's bad faith judgment, including orders related to coverage and its conduct; the amount of mental anguish and punitive damages awarded; various trial errors, including jury selection and evidentiary rulings; and the order requiring Greenwich to pay the underlying default judgment to the plaintiffs (now appellees).

For its first, multi-part argument, Greenwich contends that the trial court's orders concerning coverage were erroneous. Because this argument addresses conclusions of law, the trial court's rulings "are subject to independent de novo appellate determination." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). "In general, the proper interpretation of insurance contracts is a matter of law to be decided by a court; and, thus, an appellate court uses a *de novo*, not a deferential, standard of review." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 427

(Ky. App. 2013) (citing *Hugenberg v. West American Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174, 185 (Ky. App. 2006)).

First, Greenwich argues that the trial court improperly permitted the appellees to file a bad faith claim prematurely so that they could obtain a ruling on coverage. Rather than filing a declaratory judgment to obtain a ruling on coverage, which Greenwich argued could have been immediately appealable, the appellees instead filed a third-party bad faith action to obtain an interlocutory ruling on coverage. Greenwich points out that when the appellees were later confronted with the holding in *Pryor*, *supra*, they asserted that the holding was inapplicable to them as coverage had been established by that time

Greenwich cites to *Pryor*, *supra*, in support of this argument. In *Pryor*, the Court recognized that the general rule "is that a complainant must first establish liability before seeking indemnity from an insurer in an action based on the insured's negligence. The prohibition of direct actions against insurers until liability has been established has remained the law in Kentucky." 414 S.W.3d at 432 (citing *N.Y. Indem. Co. v. Ewen*, 221 Ky. 114, 298 S.W. 182, 185 (1927)). The *Pryor* Court examined the issue as follows:

> Next, we address whether Pryor was authorized to sue as a third-party claimant under UCSPA. In fact, an insurance company's violation of the UCSPA creates a private cause of action both for the named insured and for those who have claims against the named insured, and the same standards govern both types of cases. *Motorists*

*Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). But a third-party claimant may only sue the insurance company under USCPA when coverage is not contested or already established. *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516 (Ky. 2006). And, as stated by Chief Justice Robert Stephens in his concurring opinion in *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989):

> An insured does not avail himself of this cause of action by merely alleging bad faith due to an insurance company's disputing or delaying payment on a claim. An insured must prove that the insurer is obligated to pay under the policy, that the insurer lacks a reasonable basis for denying the claim, and that the insurer either knew there was no reasonable basis to deny the claim or acted with reckless disregard for whether such a basis existed. An insurer's refusal to pay on a claim, alone, should not be sufficient to trigger the firing of this new tort.

Therefore, a third party cannot make a claim under UCSPA for the purpose of establishing coverage. Therefore, Pryor cannot avail herself of a bad faith action in order to establish that insurance coverage was available.

*Pryor*, 414 S.W.3d at 433.

The appellees, on the other hand, argue that Greenwich's interpretation of *Pryor* is incorrect as it (Greenwich) had agreed multiple times that the trial court properly considered insurance coverage issues. They point to the motions for summary judgment filed in 2010, in which the parties asked the trial court to rule on coverage, and to Greenwich's appeal of that ruling, which was

dismissed as interlocutory. Greenwich argued to this Court in a motion for reconsideration and to the Supreme Court in a motion for discretionary review that the parties had properly sought rulings on coverage in the way they did. The appellees also argue that they had adjudicated their claims against J.D. Carty Resources prior to bringing Greenwich into the action. Only after Greenwich received unfavorable rulings did it argue in the opposite manner.

We are persuaded by Greenwich's argument that the circuit court improperly permitted the appellees to pursue their bad faith claims against it in violation of *Pryor* because coverage had not been established when they filed their third-party bad faith complaint. That coverage had been ruled on by the time *Pryor* was rendered does not excuse the error. And neither does the appellees' motion to amend the pleadings to seek a declaration of rights once the legal problem was raised. The method by which the appellees prosecuted their bad faith claim ultimately did not permit Greenwich to seek review of the trial court's interlocutory ruling on the first prong of the *Wittmer* bad faith test prior to the trial. Therefore, the trial court should have dismissed the appellees' fourth amended complaint in which they sought their third-party bad faith claim against Greenwich. We must vacate the November 8, 2018, judgment and direct the trial court to enter a judgment in favor of Greenwich on the appellees' third-party bad faith claim.

Based upon this ruling, we need not address Greenwich's remaining arguments related to coverage, the amount of damages awarded, and various trial errors.

As to the November 30, 2018, order in which Greenwich was directed to reimburse the appellees for J.D. Carty Resources' payment default under the 2008 trespass settlement in the amount of $1,520,433.27, we must also reverse that judgment. In making this award, the trial court cited to *State Automobile Mutual Insurance Company v. Empire Fire & Marine Insurance Company*, 808 S.W.2d 805, 808 (Ky. 1991) ("[A]n injured party must first obtain judgment against the opposing party defendant and then seek enforcement of the judgment rendered in an action against the defendant's indemnitor."), and its conclusion that Greenwich had wrongfully denied coverage in this action to reach this decision. We must agree with Greenwich that the appellees did not have standing to challenge the defense it provided to J.D. Carty Resources as to the settlement proceedings as the duty to defend in such situations is between the insured and the insurer, absent an assignment of rights from the insured. "As a general matter, Kentucky courts have long recognized that an insurer that breaches its duty to defend will be liable to its insured for judgments and settlements obtained after that breach." *The Point/Arc of Northern Kentucky, Inc. v. Philadelphia Indemnity Insurance Company*, 154 F. Supp. 3d 503, 507 (E.D. Ky. 2015) (citing *Interstate Cas. Co. v. Wallins Creek*

*Coal Co.*, 164 Ky. 778, 176 S.W. 217, 219 (1915)).  Therefore, the trial court erred in ordering Greenwich to pay the underlying settlement judgment.

For the foregoing reasons, the judgments of the Magoffin Circuit Court are reversed, and this matter is remanded for dismissal of the appellees' fourth amended complaint.

McNEILL, JUDGE, CONCURS IN RESULT ONLY.

TAYLOR, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Mindy G. Barfield
Shaye P. Johnson
Lexington, Kentucky

Susan L. Maines
Lexington, Kentucky

BRIEF FOR APPELLEES:

M. Austin Mehr
Philip G. Fairbanks
Lexington, Kentucky